**Marvin W. SWANSON, Plaintiff,**

v.

**DEPARTMENT OF HEALTH, STATE OF COLORADO, Defendant.**

**Civ. A. No. 90–B–1433.**

United States District Court, D. Colorado.

Sept. 25, 1991.

James M. De Rose, Englewood, Colo., for plaintiff.

George S. Meyer, Asst. Atty. Gen., Tort Litigation Section, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

In this action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*, defendant Colorado Department of Health (CDH) moves for summary judgment, contending that there is no genuine dispute of material fact concerning plaintiff's "voluntary retirement" from employment with CDH. In the alternative, CDH moves for partial summary judgment on the basis of Eleventh Amendment immunity. The issues are adequately briefed and oral argument will not materially assist their resolution. Because material facts are in dispute and the Eleventh Amendment does not bar this action, I deny the motion.

Plaintiff Marvin Swanson was hired by CDH in 1960 as an administrative assistant. From that time until 1986, he achieved above average ratings on his yearly performance reviews, and was promoted to controller of his division. Swanson avers in his affidavit that in 1986, Lee Thielen, his immediate supervisor, began to harass him in a deliberate attempt to force him to retire by withdrawing support services and showing favoritism to younger accountants. Beginning in January 1988, Swanson alleges the following facts to support his claim of constructive discharge:

* he was asked on several occasions if he ever thought of stepping down;

* on February 4, 1988, he was demoted to another position and replaced as controller by an accountant under 40 years old;

* his office was emptied overnight and placed in boxes without advance notice;

* he was again asked when he would step down;

* on February 22, 1988, he was reassigned to a semi-private office;

* on July 19, 1988, Tom Smithson, the new acting controller, singled out Swanson to file weekly progress reports;

* On August 1, 1988, Smithson was appointed to Swanson's old position of controller;

* the job description of controller was modified to accommodate Smithson by removing the required experience prerequisite;

* in December, 1988, Swanson was given work far below his level of expertise, and was charged with unreasonable deadlines on work not completed by Smithson;

* in February, 1989, Smithson again asked Swanson for his expected retirement date;

* Swanson was tasked with marking boxes with a crayon for archives;

* Swanson was denied permission to attend meetings on the Colorado Financial Reporting System, to which he was assigned as department liaison;

* on May 1, 1989, Swanson's office was again moved without his knowledge.

In his affidavit, Swanson avers that he wanted to work with CDH until he was 70 years old and that his resignation on May 23, 1989 was an involuntary act caused by CDH's demeaning and discriminatory treatment of him. Swanson seeks back pay and reinstatement or front pay.

### I.

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the opposing party cannot rest on mere allegations in his pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moveover, a district court cannot assume that general averments embrace the specific facts needed to sustain a complaint. *Lujan v. National Wildlife Federation,* 497 U.S. ——, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

 Because he resigned, plaintiff must prove that he was "constructively discharged" in order to prevail on his ADEA claim for back pay and reinstatement. Otherwise, his damages are limited to the difference between his salary as controller and his salary as an accountant, which was zero. *Derr v. Gulf Oil Corp.,* 796 F.2d 340, 342 (10th Cir.1986). "The question on which constructive discharge cases turn is simply whether the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Id.* at 344.

This is an objective test. Swanson has alleged numerous specific, factual instances where his employer made working conditions difficult for him because of his age. From these averments, which I must accept as true, I cannot say that a reasonable person could not find that Swanson was compelled to resign. *See, Mitchell v. Mobil Oil Corp.,* 896 F.2d 463, 467 (10th Cir. 1990). Moreover, even if Swanson cannot prove that he was constructively discharged, he can still recover attorney fees and nominal damages on his claim of illegal discrimination. *Derr,* 796 F.2d at 344. Therefore, because there is a genuine dispute as to whether Swanson was constructively discharged, I deny defendant's motion.

## II.

 Defendant's motion in the alternative for partial summary judgment based on the Eleventh Amendment can be resolved as a matter of law. The Eleventh Amendment bars suits by a private plaintiff against states or state agencies. Because plaintiff here is suing a state agency directly in federal court, his claim for both retrospective and prospective relief would be barred by the Eleventh Amendment unless the state has waived its immunity or

Congress has abrogated the protection. *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

By enacting the ADEA, Congress can override a state's Eleventh Amendment immunity if (1) it acted under its section 5 power to enforce the Fourteenth Amendment and (2) it intended to abrogate such immunity. *Fitzpatrick,* 427 U.S. at 456, 96 S.Ct. at 2671. The first question was specifically left open by the Supreme Court in *E.E.O.C. v. Wyoming,* 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983) and by the Tenth Circuit in *E.E.O.C. v. Wyoming Retirement System,* 771 F.2d 1425 (10th Cir. 1985).

The majority of courts which have addressed this question have concluded that the ADEA and its 1974 amendment extending its reach to state employees were enacted pursuant to the Fourteenth Amendment. I agree and adopt their reasoning. *Heiar v. Crawford County,* 746 F.2d 1190, 1194 (7th Cir.1984); *Ramirez v. Puerto Rico Fire Service,* 715 F.2d 694, 700 (1st Cir.1983); *Arritt v. Grisell,* 567 F.2d 1267, 1271 (4th Cir.1977); *Schloesser v. Kansas Dept. of Health and Env.,* 766 F.Supp. 984, 990 (D.Kan.1991); *E.E.O.C. v. County of Los Angeles,* 526 F.Supp. 1135, 1137 (C.D.Cal.1981), *aff'd,* 706 F.2d 1039 (9th Cir.1983), *cert. denied,* 464 U.S. 1073, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984). *But cf., Black v. Goodman,* 736 F.Supp. 1042 (D.Mont.1990).

I also conclude that Congress intended for states to be liable to private plaintiffs for ADEA violations. The Act defines "employer" (the class of potential defendants in age discrimination cases) to include a "State or political subdivision of a state." 29 U.S.C. § 630(b). An employer who violates the ADEA is liable for legal and equitable relief. 29 U.S.C. § 626.

Unless Congress had said in so many words that it intended to abrogate the states' Eleventh Amendment immunity in age discrimination cases—and that degree of explicitness is not required—it could not have made its intention to override the Eleventh Amendment clearer.

*Schloesser,* 766 F.Supp. at 990, (citations omitted). *See also, E.E.O.C. v. Wyoming,* 460 U.S. at 243 n. 18, 103 S.Ct. at 1064 n. 18.

Furthermore, my holding avoids a potential "catch–22" to ADEA plaintiffs that would frustrate the intent of Congress. ADEA plaintiffs cannot sue an individual state official because such persons are not "employers" as defined by the Act. 29 U.S.C. § 630(b), (the term employer includes only states and state agencies, but not agents of such entities); *see, Sagarino v. Town of Danvers,* 750 F.Supp. 51 (D.Mass.1990); *Ditch v. Board of County Commissioners,* 650 F.Supp. 1245 (D.Kan. 1986). Instead, a plaintiff must sue the state agency itself. But if a discrimination victim were to sue a state directly, he or she would face an Eleventh Amendment obstacle to relief specifically authorized by Congress in the Act and the 1974 amendments.

Accordingly, IT IS ORDERED THAT:
(1) Defendant's motion for summary judgment is DENIED;
(2) Defendant's motion for partial summary judgment is DENIED.