Joanne B. MIGNEAULT, Plaintiff,

v.

Richard PECK, et al., Defendants.

No. CIV 96–385 JC/LFG.

United States District Court,
D. New Mexico.

March 14, 1997.

---

Donna Dagnall, Albuquerque, NM, for Plaintiff.

Paula I. Forney, State of New Mexico RMD—Legal Bureau, Santa Fe, NM, for Defendants.

## MEMORANDUM OPINION

CONWAY, Chief Judge.

THIS MATTER came on for consideration of (1) Defendants' Motion to Dismiss, filed June 13, 1996; (2) Defendants' Motion for Summary Judgment, filed December 2, 1996; and (3) Defendants' Motion to Strike Exhibit 1 to Plaintiff's Response to Defendants' Motion for Summary Judgment, filed December 20, 1996. The Court has reviewed the motions, the memoranda submitted by the parties and the relevant authorities. The Court finds that Defendants' Motion to Dismiss is well taken in part and will be **granted in part.** The Court further finds that Defendants' Motion for Summary Judgment is well taken in part and will be **granted in part.** Finally, the Court finds that Defendants' Motion to Strike Exhibit 1 to Plaintiff's Response to Defendants' Motion for Summary Judgment is not well taken and will be **denied.**

### Background

Plaintiff was born on August 22, 1940 and was over 40 years old at all times relevant to this litigation. Plaintiff has also been married to Robert L. Migneault, the Dean of Library Sciences at UNM, at all relevant times.

Plaintiff was employed by the University of New Mexico from 1982 to December 31, 1994. For the majority of that time, she was a full-time, permanent employee, holding the position of Assistant to the Director of the Center for Non–Invasive Diagnosis (CNID). In March of 1994, Plaintiff was told by her supervisor that her position would be eliminated due to financial shortfalls. Plaintiff's lay-off was to go into effect on June 30, 1994. In fact, while Plaintiff's budgeted position was eliminated effective June 30, 1994, her supervisor secured funding from another source, and Plaintiff was maintained on the payroll through December 31, 1994.

On March 31, 1994, while still employed as the Assistant to the Director of CNID, Plaintiff applied for the position of Executive Secretary for the Office of the Vice President for Health Sciences. In Plaintiff's position at CNID, she was classified as a grade 11 and earned approximately $38,000 per year. The Executive Secretary position was classified as a grade 9, and the person chosen for that position was paid $27,500.

On May 12, 1994, Plaintiff was interviewed for the Executive Secretary position by Warren Baur, Associate Vice President for Finance and Administration in the Office of the UNM Vice President for Health Sciences. Plaintiff was selected as a finalist for the position and was interviewed on May 16, 1994 by Defendant Henney. Plaintiff alleges that during the interview Defendant Henney asked if Plaintiff's husband was employed at UNM. Defendant Henney argues that it was Plaintiff who brought up her husband's work, and that Plaintiff's alleged comment during the interview, "I guess I can simply do secretarial work," indicated that Plaintiff would not be satisfied in a secretarial position. On June 24, 1994, Plaintiff wrote a letter to Defendant Ortiz asking him for an update on the Executive Secretary position. On July 19, 1994, Defendant Ortiz informed Plaintiff that Rose Johnson had been hired for the position and that Plaintiff was not offered the position because she was overqualified and because the feeling was that Plaintiff would not be happy. Ms. Rose was under the age of 40 when she was offered the position of Executive Secretary.

In March of 1995, Plaintiff was interviewed by Defendant McKinney for the position of Administrative Coordinator III. Plaintiff had not asked to be interviewed for the position, but was contacted at Defendant McKinney's suggestion. After interviewing candidates, Defendant McKinney offered the position to another individual who was also on the lay off roster. The person who received the job offer was over 40 years old but younger than Plaintiff.

On March 28, 1995, Plaintiff filed a charge of age discrimination with the EEOC pursuant to the ADEA.

Plaintiff filed this lawsuit on March 22, 1996 against the University of New Mexico; Richard Peck, President of UNM; David McKinney, Vice President for Business and Finance; Dr. Jane Henney, Vice President for Health Sciences; Dr. Paul Roth, Dean of

the School of Medicine; Romeo Ortiz, Director of Human Resources, and the members of the Board of Regents, in their official and individual capacities.

Plaintiff's Complaint contains five counts: (1) Count I alleges that Defendants violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (ADEA) by not hiring Plaintiff for the positions of Executive Secretary and Administrative Coordinator III because of her age; (2) Count II alleges that Defendants violated Plaintiff's First Amendment rights by refusing to consider her for an appropriate position at UNM because of her affiliation and support of CNID and because of her marriage to a Dean on the Main Campus; (3) Count III alleges that Defendants violated the Equal Protection Clause of the Fourteenth Amendment by violating her First Amendment rights and the ADEA under color of state law; (4) Count IV alleges that Defendants violated Plaintiff's rights to procedural and substantive due process as guaranteed by the Fifth and Fourteenth Amendments; (5) Count V alleges that Defendants retaliated against Plaintiff for her filing of the EEOC charge by failing to return her from lay-off status.

### Analysis

## I. *Defendants' Motion to Dismiss*

### A. *Legal Standard*

Generally, motions to dismiss for failure to state a claim are viewed with disfavor and are therefore rarely granted. 5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1357 (1990). In ruling on a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and take the allegations asserted in the complaint as true. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

The district court should not grant a motion to dismiss for failure to state a claim unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Therefore, "the issue is not whether a plaintiff will ultimately prevail but whether claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232,

236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss is proper only if a plaintiff does not sufficiently plead a set of facts which would entitle him to relief. *Smith v. Colorado Dep't. of Corrections,* 23 F.3d 339, 340 (10th Cir.1994).

### B. *Discussion*

#### (1) **The University of New Mexico**

■ The Eleventh Amendment prohibits suit in federal court against a state, a state department or agency, or a state official acting in his official capacity unless (1) the state has consented to suit, or (2) Congress has abrogated the state's Eleventh Amendment immunity. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 908–09, 79 L.Ed.2d 67 (1984). In enacting 42 U.S.C. § 1983, Congress provided a federal forum and remedy for deprivations of federally-protected rights, but did not thereby create any substantive rights or override a state's Eleventh Amendment immunity. *See Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Thus, if the State can be said to be "the real, substantial party in interest" in a § 1983 action, the federal court may not entertain the claim unless the state has unequivocally consented to suit. *See Pennhurst,* 465 U.S. at 101, 104 S.Ct. at 908–09. Furthermore, neither a state nor a state actor acting in his official capacity is a "person" subject to liability for monetary damages under 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

■ Therefore, the only cause of action which may apply against the University of New Mexico (UNM) is Count I, which alleges a violation of the ADEA. All other counts in the Complaint are brought under § 1983. As Plaintiff admits in her Complaint that UNM is an arm of the state, there is no question that her § 1983 claims may not be brought against UNM. Therefore, all counts

except Count I will be dismissed against the University of New Mexico.

■ Defendants argue that the ADEA claim should also be dismissed against UNM because the Supreme Court's recent decision in *Seminole Tribe of Florida v. Florida,* — U.S. —, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) prevents this Court from exercising jurisdiction over Plaintiff's age discrimination claim. The Supreme Court in *Seminole Tribe* held that Congress can only abrogate a state's Eleventh Amendment immunity by (1) an unequivocally expressed intention to waive the immunity and (2) pursuant to a valid exercise of power under the Fourteenth Amendment. *Id.* at — and —, 116 S.Ct. at 1123 and 1125. Defendants contend that Congress did not act according to a valid exercise of power when abrogating the states' Eleventh Amendment immunity under the ADEA because it promulgated the ADEA based on Commerce Clause powers rather than the Fourteenth Amendment.

I have previously ruled that the Tenth Circuit has specifically found otherwise. *Shriver v. Board of Regents of Univ. of N.M.,* Civil No. 95–0015 JC/RLP (filed July 11, 1995). In *Hurd v. Pittsburgh State Univ.,* 29 F.3d 564 (10th Cir.), *cert. denied,* 513 U.S. 930, 115 S.Ct. 321, 130 L.Ed.2d 282 (1994), a Tenth Circuit panel affirmed Judge Lungstrum's opinion in *Hurd v. Pittsburg State Univ.,* 821 F.Supp. 1410 (D.Kan.1993), with little comment. Judge Lungstrum held that "[t]his court, however, concludes that the ADEA, as amended in 1974, was enacted pursuant to Congress' powers under section five of the Fourteenth Amendment." *Hurd,* 821 F.Supp. at 1412. Therefore, under *Seminole Tribe,* Congress acted within its Constitutional powers when it abrogated the states' Eleventh Amendment immunity in the ADEA, and Defendants' Motion to Dismiss will be denied with respect to the ADEA claim against UNM.

### (2) The Board of Regents

■ On September 9, 1996, an order was entered in this case dismissing the members of the Board of Regents as defendants. Plaintiff argues that the members of the Board of Regents were only dismissed in their individual capacity and remain as defendants in their official capacity. For the purpose of this motion, I will assume that Plaintiff is correct in that the September 9, 1996 order only dismissed the Board of Regents members in their individual capacity. Nevertheless, they must now be dismissed in their official capacity as well. The same rationale is applicable here as was used in analyzing the § 1983 claims against UNM. The Board of Regents acting in its official capacity is an arm of the State of New Mexico. Therefore, a § 1983 action will not lie against the Board, and all § 1983 claims brought against the Board of Regents in their official capacity must be dismissed.

Plaintiff has conceded in her Response brief that Count I, alleging a violation of the ADA, is proper only against the University of New Mexico. Therefore, because there are no causes of action which are properly brought against the Board of Regents in their official capacity, the complaint will be dismissed against them in its entirety.

### (3) Richard Peck

■ Dr. Peck is and has been the President of UNM all times relevant to this litigation. Plaintiff's only allegation against Dr. Peck is that he is responsible for the implementation and enforcement of all University policies and that he refused to take any actions to remedy the wrong suffered by Plaintiff.

> There is no concept of strict supervisor liability under section 1983. [ ] In other words, it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, just as with any individual defendant, the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights. A Plaintiff may satisfy this standard by showing the defendant-superior personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance.

*Jenkins v. Wood,* 81 F.3d 988, 995 (10th Cir.1996) (internal quotations and citations omitted).

Plaintiff's allegation against Defendant Peck, is, as a matter of law, insufficient to state a cause of action under § 1983. While

Plaintiff alleges that Peck was aware of her situation, she has not alleged that he personally directed the actions of the other Defendants of which Plaintiff complains or that he acquiesced in their alleged violation of Plaintiff's rights. Therefore, all claims against Defendant Peck shall be dismissed.

### (4) Dr. Paul Roth

■ Dr. Roth was the Interim Director of the Medical Center and Interim Dean of the School of Medicine. Plaintiff's only allegation against Dr. Roth is that he allowed the other Defendants to engage in unlawful practices and discriminate against Plaintiff due to her involvement in CNID. As with the allegations against Defendant Peck, this allegation is insufficient to state a claim under § 1983. Plaintiff has not alleged that Defendant Roth personally directed the other defendants to engage in any illegal acts or that he acquiesced in their continuance. Therefore, all claims against Defendant Roth will be dismissed.

### (5) Romeo Ortiz

■ Mr. Ortiz is the Associate Director of the Human Resources of the Health Sciences Center. Plaintiff's only allegation against Mr. Ortiz is that, by not enforcing University Policy and Procedure, he allowed the other Defendants to refuse to hire Plaintiff for illegal reasons. Once again, this allegation is not sufficient to state a claim for which relief may be granted. Plaintiff is only accusing Defendant of having failed to stop other Defendants from violating Plaintiff's rights. This is a theory of respondeat superior and is unavailable under § 1983. Therefore, all claims against Defendant Ortiz will be dismissed.

### (6) Dr. Jane Henney and Mr. David McKinney

Dr. Henney is the Vice–President for Health Sciences at UNM. Plaintiff alleges that Dr. Henney refused to hire her in violation of ADEA and University Policies and Procedures. Plaintiff further alleges that Dr. Henney refused to hire her because of Plaintiff's prior affiliation with CNID and because she was married to the Dean of Library Sciences on the Main Campus, all in violation of Plaintiff's First and Fifth Amendment rights.

Mr. McKinney is the Vice–President for Business and Finance at UNM. Plaintiff alleges that Mr. McKinney is directly responsible for administration and implementation of the UNM Business Policies and Procedures and that he denied Plaintiff a position under his direct supervision as Administrative Coordinator III to the Vice–President of Business and Finance while she was on lay-off status with the University.

#### (a) *Count II—First Amendment*

Plaintiff alleges that Defendants Henney and McKinney, by denying her the positions of Executive Secretary and Administrative Coordinator III, violated Plaintiff's First Amendment right to free association. Plaintiff alleges that Defendants did not hire her due to her marriage to a Dean on the Main Campus and due to her support and affiliation with CNID. Plaintiff argues that both of these alleged reasons for not hiring her violated her First Amendment right to free association. However, her allegation that she was not hired due to her affiliation and support of CNID is better analyzed under the rubric of freedom of speech. Plaintiff is not alleging that she was not hired simply because of the fact that she worked at CNID, but rather because of her support of her former boss in the debate regarding the future of CNID.

Defendants acknowledge in their Memorandum in Support of Motion for Summary Judgment that the right to marriage is protected by the First Amendment right to association. *See Zablocki v. Redhail,* 434 U.S. 374, 383–86, 98 S.Ct. 673, 679–81, 54 L.Ed.2d 618 (1978). They argue, however, that Plaintiff's right to be married to a dean on main campus is not similarly protected by the First Amendment. For the purposes of the Motion to Dismiss, I will assume, without deciding, that Plaintiff is protected from discrimination based on her marriage by the First Amendment right to association. I will address the evidence of such discrimination in deciding Defendants' Motion for Summary Judgment.

■ With regard to Plaintiff's allegation that her First Amendment right of free speech was violated by Defendants Henney's and McKinney's refusal to hire her due to

her former association and support of CNID, it is necessary to determine whether Plaintiff's speech was protected under the First Amendment. In order to be protected speech, speech must be regarding a matter of public concern and the interests of the employee in making the statements must be weighed against the public employer's interest in the effective and efficient fulfillment of its responsibilities to the public. *Melton v. City of Okla. City,* 879 F.2d 706, 713 (10th Cir.1989). Assuming that Plaintiff demonstrates that her speech was protected under the First Amendment, she must then show that her speech was a motivating factor in the detrimental employment decision taken against her. *Mount Healthy City Sch. Dist. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

Looking at a motion to dismiss, and construing the Complaint in favor of Plaintiff, I am unable to say that Plaintiff has not stated a claim for the violation of her right of free speech. While her speech regarding the organization and future of CNID is unlikely to be considered in the public interest, I am unable to so determine at this time. I must examine evidence outside of the pleadings to make such a determination, and thus this analysis is better done under a motion for summary judgment. Likewise, Plaintiff's interests in making the statements may or may not be greater than UNM's interest in the effective and efficient fulfillment of its responsibilities to the public, but I am unable to make such a determination at this time. Finally, Plaintiff has adequately alleged that her speech was a motivating factor in Defendants Henney's and McKinney's refusal to hire her. Therefore, I will not dismiss Count II against Defendants Henney and McKinney.

(b) *Count III—Equal Protection*

 Plaintiff alleges that her equal protection rights guaranteed by the Fourteenth Amendment were violated when Defendants violated her rights under the First Amendment and the ADEA. Defendants do not deny Plaintiff's claim that a violation of her First Amendment rights violates the Equal Protection clause. Defendants do, however, argue that a violation of the ADEA cannot violate the Equal Protection clause because age is not a protected classification under the Fourteenth Amendment.

I found earlier in this opinion that the ADEA was enacted pursuant to Congress' power under the Fourteenth Amendment. It must logically follow, therefore, that age is a protected classification under that amendment. Were it not so, Congress would have been unable to enact the ADEA pursuant to the Fourteenth Amendment. The cases cited by Defendants in support of their argument state merely that age is not a "suspect" classification worthy of a heightened standard of review. *City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 441, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985); *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942–43, 59 L.Ed.2d 171 (1979). They do not state that age is not protected under the Fourteenth Amendment. *See id.* As I find that age is a protected classification under the Fourteenth Amendment, and that Plaintiff's Complaint adequately alleges that Defendants Henney and McKinney discriminated against Plaintiff based on her age, I will not dismiss Count III against Defendants Henney and McKinney.

(c) *Count IV—Due Process*

Plaintiff alleges that both her procedural and substantive due process rights were violated. She claims that she had a property or liberty interest in UNM's written employment policies and procedures and that Defendants' alleged violation of those policies and procedures deprived her of property or liberty without due process of law. However, Plaintiff fails to point out any case law giving an individual a property or liberty interest in a state agency's employment policies and procedures.

 Due process rights attach only if the interest asserted rises to the level of a "property" or "liberty" interest and is more than just a unilateral expectation. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Additionally, substantive due process rights are founded not on state provisions but on deeply rooted notions of fundamental personal interests derived from the Constitution. *Mangels v. Pena,* 789 F.2d 836, 839 (10th Cir.1986). Under Tenth Circuit precedent, a

government employee may have a property interest in her job entitling her to the protection of substantive due process. *Archuleta v. Colorado Dep't of Insts.*, 936 F.2d 483, 489 n. 6 (10th Cir.1991). However, the Due Process clause "is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood*, 426 U.S. 341, 350, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976).

■ I find that Plaintiff seeks to use the Due Process clause as protection from an alleged incorrect personnel decision. Moreover, any rights granted to Plaintiff by UNM's personnel policies do not rise to the level of fundamental rights. Therefore, I will dismiss Count IV, alleging violations of Due Process, against Defendants Henney and McKinney.

### (d) *Count V—Retaliation*

■ Plaintiff alleges that she was retaliated against for filing an EEOC complaint. Yet she has alleged no adverse employment action by either Defendant Henney or Defendant McKinney following the filing of the EEOC complaint. Her only allegations against Defendant Henney involve not being selected for the Executive Secretary position. Plaintiff was informed in June of 1994 that she was not given the Executive Secretary position. Because she did not file her EEOC Complaint until March 28, 1995, there is no possibility that she was not hired for the position in retaliation for the EEOC Complaint. Likewise, Defendant McKinney informed Plaintiff that he had chosen someone else to fill the Administrative Coordinator III position on February 17, 1995, over one-month prior to her filing of the EEOC Complaint. Because Plaintiff has not alleged that Defendants Henney and McKinney took any adverse employment action against her subsequent to the filing of the EEOC Complaint, Plaintiff has not stated a cause of action upon which relief may be granted, and Count V will be dismissed against Defendants Henney and McKinney.

### II. *Defendants' Motion to Strike Exhibit 1 to Plaintiff's Response*

■ Attached to her Response to Defendants' Motion for Summary Judgment, Plaintiff has included 101 exhibits. Exhibit 1 is an 81–page affidavit by Plaintiff herself. Defen-dants move the Court to strike this exhibit because they argue that it is not based on personal knowledge and thus is an improper affidavit under Fed.R.Civ.P. 56.

Defendants are correct in that much of the information contained in Plaintiff's affidavit is not based on personal knowledge and thus should not be included in her affidavit. A striking example of this is the statement on page 46 of her affidavit which reads:

> The entire matter of the hiring of Ms. Basler over me is riddled with unanswered questions, non-existing paperwork and procedural violations. The bottom line reason for this is because Mr. McKinney wrongfully refused to rehire me at UNM because I was/am the wife of a dean on campus and because Mr. McKinney did not want the wife of an academic dean privy to his [affairs].

This is clearly speculation on Plaintiff's part. She is presenting her opinion as to what happened, not her personal knowledge.

Despite the many portions of Plaintiff's affidavit which are improper, she does include information of which she has first hand knowledge. Because Plaintiff has included information in her affidavit of which she has first hand knowledge and which may be useful in deciding the Motion for Summary Judgment, I will deny Defendants' Motion to Strike Exhibit I of Plaintiff's Response. Nevertheless, Plaintiff and her counsel are strongly advised that, in the future, affidavits should be based solely on personal knowledge and should not include speculation or argument that belongs more properly in the brief submitted by counsel.

### III. *Defendants' Motion for Summary Judgment*

#### A. *Legal Standard*

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Federal Rules of Civil Procedure provide that it is the movant's burden to demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 321–23, 106 S.Ct. 2548, 2551–53,

91 L.Ed.2d 265 (1986). Once the movant has made such a showing, the adverse party "may not rest upon the mere allegations or denials of [their] pleading[s], [they] must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In reviewing a summary judgment motion, "[t]he evidence must be viewed in the light most favorable to the nonmoving party, *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 977 (10th Cir.1995), even when it is produced by the moving party." *Buchanan v. Sherrill*, 51 F.3d 227, 228 (10th Cir.1995). "Summary judgment is only appropriate if 'there is [not] sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party'" *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1266 (10th Cir.1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986)). "Thus, to defeat a summary judgment motion, the non-movant 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted).

### B. Discussion

#### (1) University of New Mexico

The only remaining claim against UNM is that it violated the ADEA by not hiring Plaintiff for the positions of Executive Secretary and Administrative Coordinator III. Defendants argue that this Court does not have jurisdiction over the ADEA claim because Plaintiff failed to file her EEOC Complaint in a timely manner.

I agree with Defendants that this Court does not have jurisdiction over Plaintiff's allegations that Defendant McKinney refused to hire her in violation of the ADEA. Plaintiff did not include that incident in her EEOC Complaint, and thus she cannot now bring it before this Court.

Plaintiff did, however, timely file her EEOC Complaint alleging that Defendant Henney did not hire her in violation of the ADEA. Defendants argue that Plaintiff did not file the EEOC Complaint within the 180-day time limit set out in 29 U.S.C. § 626(d)(1) because she was informed that Defendant Henney had hired another person for the Executive Secretary position on June 28, 1994, and she did not file her EEOC Complaint until March 28, 1995. Plaintiff responds that she did not learn that she had been discriminated against until February 14, 1995, and that therefore her EEOC Complaint was timely filed.

In their arguments, both Plaintiff and Defendants appear to ignore the provisions of 29 U.S.C. §§ 626(d)(2) and 633(b) which provide that a plaintiff may file an EEOC Complaint within 300 days of the act of discrimination in a deferral state. A deferral state is one in which there is a law prohibiting discrimination based on age and which establishes or authorizes a state authority to grant or seek relief from such discriminatory practice. *See* 29 U.S.C. § 633(b). New Mexico is clearly a deferral state as NMSA § 28–1–7(A) prohibits employers from discriminating based on age and NMSA § 28–1–3 creates the New Mexico Human Rights Commission where parties can seek relief from age discrimination. Therefore, Plaintiff had 300 days in which to file her EEOC Complaint. As she filed her EEOC Complaint nine months after she was informed that she was not to receive the Executive Secretary position, she clearly met the 300 day filing deadline.

Plaintiff's first step in proving discrimination under ADEA is to supply evidence proving a prima facie case of age discrimination by a preponderance of the evidence. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407, (1993). To prove a prima facie case of age discrimination, Plaintiff must show that: (1) she was a member of a protected class (age 40 to 70); (2) she was adversely affected by the employment decision; (3) she was qualified for the position; and (4) a younger person was given the desired position. *Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir.1995). "An ADEA plaintiff must establish that age was 'a determining factor' in the employer's challenged

# 1306

decision." *Id.* (quoting *E.E.O.C. v. Sperry Corp.,* 852 F.2d 503, 507 (10th Cir.1988)). This burden may be met by means of direct or circumstantial evidence. *Id.*

Once Plaintiff establishes her prima facie case, a presumption arises that her employer unlawfully discriminated against her, and the burden shifts to Defendant to produce admissible evidence of a nondiscriminatory explanation for its employment action. *St. Mary's Honor Center,* 509 U.S. at 506–08, 113 S.Ct. at 2747. If Defendant meets its burden, then Plaintiff bears the ultimate burden of showing that there is an issue of material fact whether the employer's nondiscriminatory reason is pretextual. *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995). "If the plaintiff succeeds in showing a prima facie case and presents evidence that the defendant's proffered reason for the employment decision was pretextual—i.e., unworthy of belief, the plaintiff can withstand a summary judgment motion and is entitled to go to trial." *Id.*

Plaintiff easily makes out a prima facie case of age discrimination. First, at age 53, she was undoubtedly within the protected class. Second, she was denied the position of Executive Secretary in Defendant Henney's office, and she was, at least arguably, qualified for the position. Finally, Rose Johnson, who was given the position was, at age 31, outside the protected class.

The burden then shifts to Defendant UNM to articulate a non-discriminatory reason for failing to hire Plaintiff. As did Plaintiff, UNM is able to meet this burden easily. Defendant Henney articulated several legitimate reasons why she did not hire Plaintiff. It appeared from Plaintiff's resumè that it had been a fairly long time since Plaintiff had done secretarial work. Furthermore, Defendant Henney was looking for a person who had contacts both within and outside of UNM and who had knowledge of UNM Boards. Defendant Henney believed that Rose Johnson better possessed these contacts and knowledge than did Plaintiff. Furthermore, Defendant Henney stated that Plaintiff's relatively important position at CNID and her alleged comment during the interview that she could "just do secretarial work," led Defendant Henney to believe that Plaintiff would not be happy in the position.

While the above reasons articulated by Defendant UNM for not hiring Plaintiff are sufficient to pass the burden of proof back to Plaintiff, Plaintiff is able to make a showing that these reasons are pretextual. First, Plaintiff states that she never made the comment about doing "just secretarial work," and argues that she has at least as many, if not more contacts both within and outside UNM as did Rose Johnson. Plaintiff also argues that Defendant Henney, had she checked Plaintiff's references, would have found that Plaintiff had strong secretarial skills which she used frequently in her job at CNID. Finally, Plaintiff alleges that during her interview, Defendant Henney asked Plaintiff why she would want to retire in that position. Plaintiff understood this comment to be a negative reference to her age, and such an interpretation is not unreasonable. I find that Plaintiff has met her burden of showing that a material fact exists as to whether Defendant's proffered non-discriminatory reasons are pretextual. Therefore, the question of whether Defendant UNM violated Plaintiff's rights under the ADEA should go to a jury, and I will not grant summary judgment as to Count I.

### (2) Dr. Jane Henney and Mr. David McKinney

The remaining claims against Defendants Henney and McKinney are that they violated Plaintiff's First Amendment rights and her Equal Protection rights.

#### (a) *Violation of the First Amendment*

Plaintiff claims that she was not employed by Defendants Henney and McKinney in violation of her rights to free speech and free association under the First Amendment. First, she claims that she did not receive offers of employment from Defendants due to her support of CNID. To determine whether Defendants possibly deprived Plaintiff of her First Amendment right of free speech, I must first decide whether Plaintiff's speech focused on a matter of public concern. *Walter v. Morton,* 33 F.3d 1240, 1242 (10th Cir.1994).

A statement is a matter of public concern if it can be "fairly considered as relating to any matter of political, social, or other concern to the community[,]" but if it is

of a personal nature, then it is not protected. *Connick v. Myers,* 461 U.S. 138, 146 and 147, 103 S.Ct. 1684, 1689–90 and 1690, 75 L.Ed.2d 708 (1983). To decide whether a particular statement is of a personal nature, "courts must conduct a case by case inquiry, looking to the 'content, form, and context' of the speech, which includes scrutinizing whether the speaker's purpose was to bring an issue to the public's attention or to air a personal grievance." *Moore v. City of Wynnewood,* 57 F.3d 924, 932 (10th Cir.1995). For an employee's speech to be protected, it must be helpful to the public in evaluating government conduct, and it cannot merely relate generally to matters of public interest. *Id.*

■ Plaintiff's allegedly protected speech was her complaints about the way in which CNID was to be reorganized. Plaintiff's comments were directed only to UNM employees and were, without doubt, in the nature of a private grievance. Plaintiff was not attempting to bring UNM's allegedly wrongful conduct to the public attention, but was rather informing UNM itself that she did not think its actions were proper. Plaintiff cannot credibly argue that her comments regarding CNID's reorganization were helpful to the public in evaluating government conduct. Therefore, I find that the First Amendment does not protect Plaintiff's statements made in support of CNID, and I will grant summary judgment for Defendants Henney and McKinney on the allegation that they violated Plaintiff's First Amendment rights to free speech.

■ Plaintiff next argues that she was not hired by Defendants Henney and McKinney due to her marriage to a dean on main campus in violation of her First Amendment right to free association. Plaintiff has not produced sufficient evidence that her marriage was a determining factor in any employment decision to create a material issue of fact. Plaintiff's only evidence against Defendant McKinney in this regard is that he knew of her marriage. This is clearly insufficient. Against Defendant Henney, Plaintiff's only evidence that she was not employed due to her marriage is the allegation that Defendant Henney asked her during her interview if her husband worked on main campus. Defendant Henney asserts that Plaintiff was the one who brought up her

marriage, but this is irrelevant. Even if Defendant Henney had asked the alleged question, it would be, as a matter of law, insufficient to show a violation of Plaintiff's right to free association. Therefore, I will grant summary judgement as to Plaintiff's claims that Defendants violated her First Amendment right to free association.

### (b) *Equal Protection*

The essence of Plaintiff's Equal Protection claim is that Defendants Henney and McKinney violated her Fourteenth Amendment right to Equal Protection by not hiring her in violation of the ADEA and her First Amendment rights. As discussed above, there is insufficient evidence to create a material fact as to whether her First Amendment rights were violated. Therefore, those allegations are likewise unable to support a violation of Equal Protection and will be dismissed. As for Plaintiff's claim that the alleged violation of the ADEA violated Plaintiff's rights under the Equal Protection clause, I will examine each remaining Defendant separately.

### (i) *Defendant Henney*

■ I found above that there was sufficient evidence to support a claim that UNM violated the ADEA when Defendant Henney refused to hire Plaintiff. The difference between the ADEA claim and the Equal Protection claim is that the ADEA claim is against UNM where the Equal Protection claim is against Defendant Henney personally. Nevertheless, the conduct that underlies the claims is the same. As I already found that there was sufficient evidence to go to a jury based on Defendant Henney's actions, I need not reanalyze that issue here. Plaintiff has produced sufficient evidence that Defendant Henney's actions violated the ADEA and thus violated Plaintiff's Equal Protection rights. Therefore, I will not grant summary judgment on the Equal Protection claim against Defendant Henney based on her alleged age discrimination against Plaintiff.

### (ii) *Defendant McKinney*

■ Whereas I had already analyzed Plaintiff's allegations of age discrimination against Defendant Henney, the same is not true regarding the allegations against Defendant McKinney. Plaintiff alleges that Defendant McKinney discriminated against her

based on her age in violation of her Equal Protection rights. The same analysis must be used here as was used in analyzing the ADEA claim against UNM. Plaintiff must first make out a prima facie case of discrimination. The burden then shifts to Defendant McKinney to articulate non-discriminatory reasons for not hiring Plaintiff. If Defendant does this, the burden shifts back to Plaintiff, and she must produce evidence that Defendant's reasons are pretextual.

Plaintiff is able to make out a prima facie case of age discrimination. She was 54 years old at the time that she was not hired. She was adversely affected by not being hired even though she was at least arguably qualified for the job, and the job was given to a younger individual. Even though the person who received the job was also a member of the protected class, she was considerably younger than Plaintiff, and I will assume for purposes of this motion that it is sufficient that she was younger than Plaintiff. Defendant McKinney is likewise able to meet his burden of articulating non-discriminatory reasons for not hiring Plaintiff. Defendant states that he was looking for someone with strong computer skills for the job and that the other candidate had better computer skills. Thus, Defendant meets his burden, and Plaintiff now has the burden to produce evidence that Defendant McKinney's reasons are pretextual. The only evidence that Plaintiff has produced is that, according to her, computer skills were not a large part of the job description and were not really necessary for the job. I find that this is insufficient to allow a reasonable jury to disbelieve Defendant's articulated reasons for not hiring Plaintiff. Therefore, I will grant summary judgment on Plaintiff's claim that Defendant McKinney violated her Equal Protection rights.

### (3) *Qualified Immunity*

Defendants argue that qualified immunity bars Plaintiff's claims against them. The only claim remaining against an individual defendant is that Defendant Henney violated Plaintiff's Equal Protection rights. Therefore, I will address the question of qualified immunity only in that context.

In evaluating a claim of qualified immunity, the Court must first determine whether Plaintiff asserted a violation of a constitutional right. *Liebson v. New Mexico Corrections Dep't.*, 73 F.3d 274, 276 (10th Cir.1996). "If the court determines that plaintiff has asserted the violation of a constitutional right, the court must then determine whether that right was clearly established so that reasonable officials in defendants' situation would have understood their conduct violated that right." *Id.*

Here, I have already determined that Plaintiff has stated a violation of a constitutional right. She has asserted a violation of her right to Equal Protection under the Fourteenth Amendment. The alleged violation occurred when Defendant Henney discriminated against Plaintiff based on her age. There can be no question but that the illegality of age discrimination was clearly established at the time that Defendant Henney is alleged to have discriminated against Plaintiff. Furthermore, the Tenth Circuit had already ruled that the ADEA was promulgated under Congress' Fourteenth Amendment powers. Therefore, I find that the law was sufficiently established so that reasonable officials would have understood that age discrimination violates a person's Equal Protection rights. For this reason, Defendant Henney is not entitled to qualified immunity for the alleged violation of Plaintiff's Fourteenth Amendment right to Equal Protection.

## IV. Conclusion

Following the above analysis of Defendants' Motion to Dismiss and Motion for Summary Judgment, the only claims remaining in this case are: (1) that Defendant UNM violated the ADEA when Defendant Henney refused to employ Plaintiff as an Executive Secretary due to age discrimination; and (2) that Defendant Henney violated Plaintiff's right to Equal Protection under the Fourteenth Amendment when she refused to employ Plaintiff due to age discrimination.

An order in accordance with this opinion shall be entered.